**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

ENCORE ENTERPRISES, INC.

    Plaintiff,

v.                                                     CASE NO. 2:09-CV-118-FTM-36SPC

ROBERTS HOTELS FORT MYERS, LLC,

    Defendant.
_____/

## ORDER AND OPINION

**I.**    **INTRODUCTION**

Encore Enterprises, Inc. ("Encore") filed its initial complaint against Roberts Hotels Fort Myers, LLC ("Roberts Hotels") on February 27, 2009 (Dkt. 1). Subsequently, Encore filed a third amended complaint (Dkt. 55) in which it asserts causes of action for money had and received and unjust enrichment. Here, the dispute pertains to an insurance check in the amount of $160,169.74 (the "Check") related to a hotel (the "Hotel") in Fort Myers, Florida. Encore claims that it is the rightful owner of the Check and that the Check was sent in error to Roberts Hotels. Roberts Hotels claims that it is the rightful owner of the Check and that it purchased the right to the Check when it purchased the Hotel from VB-1, Ltd. ("VB-1").

The Court conducted a two-day bench trial, beginning on August 30, 2011 (Dkt. 112). Encore called five witnesses during the trial. Two witnesses testified via deposition: 1) Kenneth Schoff, the Loss Draft Coordinator of Midland Loan Services; and 2) Kevin Majewski, Director of Property Litigation for Hartford Fire Insurance Company. Three witnesses presented live testimony: 1) John Gorman, the former Director of Claims and Loss Control of Arthur J. Gallagher

Company; 2) Joe Zavaterro, the Risk Manager for Encore; and 3) Alan Murray, General Counsel for Encore and its subsidiaries. Roberts Hotels presented the testimony of Joseph S. von Kaenel, an attorney who represented Roberts Hotels in the transaction by which Roberts Hotels purchased the Hotel from VB-1.

## II.  FEDERAL JURISDICTION

This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332(a)(1). Encore is a Mississippi corporation with its principal place of business in Dallas, Texas (Dkt. 55, ¶1). Roberts Hotels is a Missouri limited liability company registered to do business in Florida. *Id*. at ¶2. The members of Roberts Hotels are citizens of Missouri (Dkt. 115, Ex. A).[1] The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00. *Id*. at ¶3. As such, the Court has jurisdiction over this matter.

## III.  STIPULATIONS

The parties stipulated to the following facts, as set forth in the Joint Final Pretrial Statement (Dkt. 88):

1. Encore, through subsidiaries, owned VB-1.

2. Encore, through subsidiaries, owns Pineapple Management Services, Inc. ("Pineapple Management").

3. VB-1 owned the Hotel, known as the Coral Bridges Suits located at 9200 College Parkway, Fort Myers, Florida, from 1999 until November 7, 2007.

---

[1] The Court issued an order to show cause on the issue of diversity because Roberts Hotels is a limited liability company (Dkt. 111). Based on the response filed by Plaintiff and the oral representations of Counsel, the Court is satisfied that there is complete diversity in this case (Dkts. 115, 117).

4. Pineapple Management managed the Hotel.

5. The Hotel was insured with First State Management Group ("First State"), a subsidiary of The Hartford, policy number GW00063, effective November 1, 2004 to November 1, 2005 (the "Policy").

6. Encore was an insured under the Policy only with respect to the hotels that are scheduled under the current policy.

7. Coral Bridges Suites was an insured hotel under the Policy.

8. During the time that it owned the Hotel, VB-1 was a party to a mortgage related to the Hotel (the "Mortgage").

9. On approximately October 24, 2005, the Hotel suffered damages from Hurricane Wilma (the "Damages").

10. Ken Schoff ("Schoff") is the Loss Draft Coordinator of Midland Loan Services, Inc. ("Midland"), which is the servicing agent for the Hotel's lender, Wells Fargo Bank. Schoff has held that position for the last eighteen years.

11. In May 2006, the insurance company issued a check in the amount of $280,735.80 related to the Damages. Midland endorsed the check to VB-1.

12. In August 2006, the insurance company issued a check in the amount of $48,959.23 related to the Damages. Midland endorsed the check to VB-1.

13. On July 24, 2007, VB-1 entered into a Purchase and Sale Agreement with Roberts Hotels. The Purchase and Sale Agreement was amended on August 22, 2007 and September 20, 2007.

14. Encore was not a party to the Purchase and Sale Agreement.

15. The transaction between VB-1 and Roberts Hotels closed on November 7, 2007.

16. In April 2008, the insurance company issued a check payable to "Encore Enterprises, Wells Fargo Bank NA c/o Midland Loan Services, Inc. Coral Bridges Suites" in the amount of $160,169.74 related to the Damages. The lender endorsed the Check to Roberts Hotels and sent the Check to Roberts Hotels.

17. Roberts Hotels cashed the Check.

18. All of the insurance checks arose from the same insurance claim.

19. On October 15, 2008 and December 15, 2008, Encore demanded that Roberts Hotels pay the proceeds of the Check to Encore. Roberts Hotels refused.

20. On August 13, 2010, Encore obtained from Midland an assignment of an unjust enrichment claim against Roberts Hotels.

IV. **ADDITIONAL FINDINGS OF FACT**

In addition to the stipulations, the Court finds that the evidence at the trial established the following facts:

1. Encore paid for the repairs to the Hotel.

2. The majority of the repairs were completed on May 30, 2006. All of the repairs were completed before the sale of the Hotel from VB-1 to Roberts Hotels.

3. The payees on the May 2006 Insurance Check were Encore Enterprises, Wells Fargo Bank, N.A. c/o Midland Loan Services, Inc., Coral Bridge Suites.

4. Joe Zavaterro, the Risk Loss Manager of Encore at the time the Hotel was damaged, sent the May insurance check to Midland for Midland to endorse the check and return it to him. Midland endorsed the check and returned it to Zavaterro.

5.  The payees on the August 2006 insurance check were Encore Enterprises, Wells Fargo Bank, N.A. c/o Midland Loan Services, Inc., Coral Bridge Suites.

6.  Joe Zavaterro sent the August insurance check to Midland for Midland to endorse the check and return it to him. Midland endorsed the check and returned it to Zavaterro.

7.  On June 1, 2007 an insurance check was issued in the amount of $160,169.74 to Encore Enterprises, Well Fargo Bank, N.A. c/o Midland Loan Services, Inc., Coral Bridge Suites. The check was issued to cover the cost of repairs to the Hotel from Hurricane Wilma. As this was the final check for damages, Midland closed the insurance claim after issuing this check.

8.  Encore did not receive the Check in 2007. The June 1, 2007 Check was not cashed.

9.  Upon discovery of the non-receipt of the Check, in 2008, Encore requested that the insurance claim be re-opened and another check issued.

10. In April 2008, Zavaterro received a replacement insurance check in the amount of $160,169.74 made payable to Encore Enterprises, Wells Fargo Bank, N.A. c/o Midland Loan Services Inc., Coral Bridge Suites.

11. Zavaterro sent the replacement insurance check to Midland for Midland to endorse the check and return it to him. Midland endorsed the check, but sent it to Roberts Hotels, the new owners of the Hotel.

12. The $160,169.74 insurance check was sent to Roberts Hotels by mistake.

13. Pursuant to Section 2.1.4 of the Purchase and Sale Agreement between Roberts Hotels and VB-1, Roberts Hotels purchased, among other things, all intangible

    personal property rights related to the Hotel including contract rights related to the operation or ownership of the Hotel.

14. As part of the transaction, Roberts Hotels also assumed the Mortgage and the underlying loan.

15. The transaction closed on November 7, 2007. Roberts Hotels purchased the Hotel from VB-1 for approximately $6.2 million.

16. Roberts Hotels did not make any repairs to the Hotel, as a result of damage caused by Hurricane Wilma.

## V. CONCLUSIONS OF LAW

### a. Money Had and Received

"The common law count known as 'money had and received' constitutes a remedy at law to recover money erroneously paid or received by a defendant when to permit the defendant to keep the money would unjustly deprive the plaintiff of his ownership of the money." *Sharp v. Bowling*, 511 So.2d 363, 364-65 (Fla. 5th DCA 1987)(citations omitted). This remedy is an action at law but equitable in nature because it "is founded upon the equitable principle that no one ought to be unjustly enriched at the expense of another." *Id*. at p. 365 (citing *Stone v. White*, 301 U.S. 532, 535, 57 S. Ct. 851, 81 L. Ed. 1265 (1937) and *Federal Land Bank v. Godwin*, 107 Fla. 537 (Fla. 1931)).

The Court finds that Encore has established its claim for money had and received by the greater weight of the evidence. The insurance proceeds at issue were disbursed to cover the cost of the repairs to the Hotel as a result of Hurricane Wilma. Encore notified Midland that it had completed the majority of the repairs to the Hotel on May 30, 2006. Pl. Ex. 23. The Check for $160, 169.74 was issued to Encore on June 1, 2007. Pl. Ex. 46. The claim was then closed. Pl. Ex.

34. Encore never received this check. In 2008, Encore made a request for re-issuance of the Check and the claim was re-opened. The check was reissued on April 3, 2008 and sent by Midland to Roberts Hotels by mistake. Pl. Exs. 25, 34. In August 2008, the Check in the amount of $160,169.74 was cashed by Roberts Hotels. Pl. Exs. 26, 27, 35. The purpose of the check was to reimburse Encore for the repairs it made to the Hotel after the hurricane. Roberts Hotels did not make any repairs to the Hotel. Likewise, it did not have a right to the insurance proceeds in 2007, when the check was initially sent. The greater weight of the evidence establishes that the Check was erroneously sent to Roberts Hotels. Roberts Hotels will not be allowed to keep the proceeds of the insurance check because that would unjustly deprive Encore of its ownership of the money.

    **b.**    **Unjust Enrichment**

"The essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006).

Alternatively, the Court finds that Roberts Hotels was unjustly enriched by the Check that it received from Midland. First, Roberts Hotels received the benefit of the insurance proceeds by cashing the Check which was issued to cover the costs of the repairs to the Hotel following Hurricane Wilma. Second, Roberts Hotels appreciated this benefit because it retained the insurance proceeds. Third, Roberts Hotels' acceptance and retention of the benefit under the circumstances would make it inequitable for it to retain the value of the Check without paying Encore.

Furthermore, there are insufficient facts to establish that the Check was intended to be sold

to Roberts Hotels by VB-1.[2] On November 7, 2007, VB-1 and Roberts Hotels entered into a consent and assumption agreement with limited release. Def. Ex. 69. There is no reference to the insurance claim or proceeds related to Hurricane Wilma in the Agreement. When the purchase and sale agreement was entered into, Roberts Hotels had no knowledge of the insurance Check. Additionally, the insurance Check had initially been issued by the insurance company in June 2007, before the purchase of the Hotel by Roberts Hotels.

The insurance proceeds also were not included as intangible personal property of VB-1 or as an account receivable of VB-1. The purchase and sale agreement between VB-1 and Roberts Hotels includes a provision relating to VB-1's intangible personal property. Jt. Ex. 15, p. 6. The provision includes a list of items to be included and excluded among the intangible personal property of VB-1. *Id*. VB-1's accounts receivables were among the intangible personal property to be included in the sale to Roberts Hotels. *Id*. The Check is not referred to or addressed in the purchase and sale agreement between VB-1 and Roberts Hotels. At the time of Closing, the insurance claim had been closed, as the check was initially issued in July 2007. By the greater weight of the evidence, the Court finds that the insurance proceeds were not an account receivable for VB-1 or intangible personal property of VB-1 at the time of the Closing in November 2007. Thus VB-1 did not sell the right to the proceeds from the insurance Check to Roberts Hotel. Plaintiff has established that Roberts Hotels would be unjustly enriched if it were allowed to keep the proceeds of the insurance Check.

    c.    **Affirmative Defenses**

---

[2] In VB-1's 2005 mortgage, there is a specific provision requiring VB-1 to maintain insurance to cover any damage mortgaged property. Jt. Ex. 14, p. 4. The Hotel was, in fact, insured against damage by Encore, and VB-1 was a subsidiary of Encore. Jt. Exs. 1, 7.

In the Order on the motion for summary judgment (Dkt. 62, pp. 6-7), the Court found that Roberts Hotels' affirmative defenses as to the economic loss doctrine and as to Encore's inability to make claims that are covered by express contracts (Dkt. 95, pp. 11-12) failed. Although not addressed at the trial, the Court now considers the affirmative defenses of waiver, estoppel and laches, Midland's discretion under the Mortgage, failure to join an indispensable party, and the lease termination agreement between Encore and VB-1.

### i. Affirmative Defense No. 4 - Waiver, Estoppel and Laches

#### (1) *Waiver*

"The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So.2d 1098, 1104 (Fla. 5th DCA 2006)(citations omitted).

In this case, no evidence was presented at trial to demonstrate that Encore waived its right to the Check. Encore had a right to the Check at the time that it was mistakenly sent to Roberts Hotels. Encore was aware of this right, as it was the entity that made a request for the re-issuance of the Check. However, there is no evidence that Encore intended to relinquish its right to the Check. Therefore, the affirmative defense of waiver fails.

#### (2) *Estoppel*

The essential elements of estoppel are: (1) that the party to be estopped know the facts; (2) that he intends that his conduct be acted on; (3) that the other party be ignorant of the facts; and (4) that the other party rely on the former party's conduct to his detriment. *Krutel v. Stolberg*, 356 So.2d 1299, 1301 (Fla. 3d DCA 1978).

As with waiver, the Court finds that there was no evidence presented at trial to support a finding that Roberts Hotels may assert the defense of estoppel. First, Encore had knowledge of the facts. Second, Encore did not intend for Roberts Hotels to rely upon its request for the re-issuance of the Check because it was not a party to the sale between VB-1 and Roberts Hotels. Further, the Check was a re-issuance of an insurance claim that had already been closed prior to the finalization of the sale. Third, Roberts Hotels may have been ignorant of the fact that the Check had been issued, but it knew that repairs had been made to the Hotel that it purchased from VB-1. Therefore, Roberts Hotels did not rely on Encore's request for a re-issuance of the Check to its detriment.

### (3) *Laches*

There are four elements for the defense of laches: (1) conduct on the part of the defendant; (2) plaintiff's knowledge of the defendant's conduct and failure to file suit based on that conduct; (3) the defendant's lack of knowledge that the plaintiff would assert his rights by filing suit; and (4) injury or prejudice to the defendant if the plaintiff is allowed to file suit. *Van Meter v. Kelsey*, 91 So.2d 327, 330-31 (Fla. 1956).

The Court finds that the affirmative defense of laches also fails. First, Roberts Hotels received the Check. Second, Encore knew that Roberts Hotels received the Check. Encore attempted to retrieve the Check, but Roberts Hotels refused to return it to Encore. Third, after receiving a request for the Check from Encore, Roberts Hotels was aware that Encore was asserting its right to the Check. Following Roberts Hotels' refusal to return the Check, Encore filed suit. Therefore, Roberts Hotels was not injured or prejudiced by Encore's initiation of the present lawsuit.

### ii. Affirmative Defense No. 13 - Section of the Mortgage and Discretion

VB-1 entered into a mortgage for the Hotel. Jt. Ex. 14. In the Mortgage Agreement, the borrower, VB-1, agreed to give the Lender, Midland, the power to settle, adjust or compromise any claims for any insurance proceeds. *Id*. at p. 6. If the insurance proceeds exceeded $25,000.00 and the value of the mortgaged property remained greater than fifty percent of its value immediately prior to the casualty, then all of the insurance proceeds would be paid to Midland. *Id*. Midland also had the discretion to disburse the insurance proceeds as necessary for the repair or replacement of the mortgaged property. *Id*.

Based on this provision, the insurance proceeds were to be used for the repair of the mortgaged property, the Hotel. *See* Jt. Ex. 6. Roberts Hotels did not make any repairs to the Hotel. Encore made the repairs to the Hotel. Therefore, Midland did not use its discretion and intend to give Roberts Hotels the insurance proceeds. Rather, as the evidence at trial established, Midland sent the check to Roberts Hotels by mistake.

### iii.     Affirmative Defense No. 14 - Indispensable Party Not Joined

Rule 19, Fed. R. Civ. P., governs joinder of parties. It states a two-part test for determining whether a party is indispensable. "First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible. If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction), then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1279-80 (11th Cir. 2003)(citation omitted). For the first determination, pragmatic concerns, including the effect on the parties and the litigation, control. *Id*. at 1280 (citations omitted). The burden is on the movant to show the nature of the unprotected interests of the absent parties. *West Peninsular Title*

*Co. v. Palm Beach County*, 41 F.3d 1490, 1492 (11th Cir. 1995).

Here, Roberts Hotels contends that Encore failed to join an indispensable party, VB-1 (Dkt. 62, p. 7). Encore was listed as the insured on the insurance policy. Jt. Ex. 1. Encore also entered into a contract for the repairs of the Hotel. Jt. Ex. 10. The insurance money was to cover the cost of the repairs to the Hotel following Hurricane Wilma. Jt. Ex. 6. VB-1 did not file an insurance claim regarding hurricane damage to the Hotel. VB-1 did not make repairs to the Hotel. Because this case is solely a dispute over the insurance proceeds, VB-1 is not an indispensable party.

### iv.    Affirmative Defense No. 15 - Lease Termination Agreement

Roberts Hotels argues that Encore transferred, granted, conveyed and assigned to VB-1 the rights that it had with respect to the insurance check pursuant to a Lease Termination Agreement, General Assignment and Bill of Sale, and Cancellation of Note dated November 7, 2007 (Dkt. 62, p. 7). Roberts Hotels references the lease agreement between Encore, the tenant, and VB-1, the landlord, that terminates the lease for the premises. Jt. Ex. 22. Encore agreed to transfer to VB-1 its interest in various intangible and tangible items associated with the property, including "all proceeds in respect to any damages to or destruction of" the property. *Id*. Encore was supposed to receive payment for its repairs of the damages to the property in June 2007. Pl. Ex. 46. At the time that the Lease Agreement was terminated, the claim was closed under the assumption that Encore had received the Check for the repairs. Therefore, the insurance proceeds were not intended to be a part of the intangible or tangible items that Encore assigned to VB-1 in the Lease Termination Agreement in November 2007.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff Encore Enterprises, Inc. established by the greater weight of the evidence the elements of Count I, Money Had and Received.  Alternatively, Plaintiff Encore Enterprises established by the greater weight of the evidence the elements of Count II, Unjust Enrichment.

2. Defendant Roberts Hotels Fort Myers, LLC did not present sufficient evidence to establish any of its Affirmative Defenses.

3. The Court finds in favor of Plaintiff Encore Enterprises, Inc. as to Count I, Money Had and Received.  Alternatively, the Court finds in favor of Plaintiff Encore Enterprises, Inc., as to Count II, Unjust Enrichment.  Plaintiff Encore Enterprises shall recover from Defendant the amount of $160,169.74 for actual damages.

4. The Clerk is directed to enter judgment in favor of Plaintiff Encore Enterprises, Inc. as to Count I of the Third Amended Complaint and close this case.

**DONE AND ORDERED** at Ft. Myers, Florida, on October 31, 2011.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**COPIES TO**:
COUNSEL OF RECORD